IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRYON CARL BROWN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. CIV-07-771-F |
| ) | |
| JOSEPH SCIBANA, Warden, ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2241, seeking a writ of habeas corpus. United States District Judge Stephen P. Friot referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Respondent has filed a response to the petition, to which Petitioner has replied. Thus, the matter is at issue. For the following reasons, it is recommended that the petition be denied.

**I.    BACKGROUND**

Petitioner currently is incarcerated at the Federal Correctional Institution in El Reno, Oklahoma ("FCI-El Reno") where he is serving a 46-month sentence for use of a false social security number and fraud. Petition, p. 1; see Response, Ex. 2, Attach. C, p. 16.[1] Petitioner contends that he was denied due process in connection with a prison disciplinary hearing held while he was confined at the Federal Transfer Center ("FTC") in Oklahoma City. Petition, p. 3-4.

---

[1] The pages of the Attachments to Exhibit 2 of the Response are not numbered. Citations to page numbers for these Attachments are derived by hand counting the pages.

At the relevant time, Petitioner had a prescription for Tylenol 3 with codeine ("Tylenol"). Response, Ex. 2, Attach. A, p. 1; Response, Ex. 2, Attach. C, p. 15. On March 27, 2006, an FTC Special Investigative Staff member received an anonymously written Inmate Request to Staff form indicating that Petitioner was selling his Tylenol pills to another inmate, "M.S." Id. at Ex. 2, Attach. C, p. 15.[2] Because M.S. previously had a prescription for Tylenol 3 and traces of the drug could have resulted in a positive urinalysis ("UA") test if one was performed, prison officials did not conduct an immediate UA test upon M.S. However, on April 7, 2006, FTC officials obtained a urine sample from M.S. which tested positive for morphine, and a urine sample from Petitioner which tested positive for codeine and morphine. Id. at 9-16.

While awaiting the results of the UA tests, Lt. Swain, a Special Investigative Supervisor, interviewed Petitioner on April 12, 2006. Petitioner admitted that he sold his prescription drugs to M.S. on three occasions in exchange for commissary items. Id. at 17. Lt. Swain interviewed M.S. on April 18. Id. M.S. admitted purchasing prescription pain medication from another inmate, but not Petitioner. However, approximately two weeks later, on May 2, 2006, Lt. Swain re-interviewed M.S. who admitted to obtaining pain pills from Petitioner twice in exchange for pizza kits that he had received from the commissary. He stated that he most recently purchased pain medication from Petitioner around March 1, 2006. Id. To confirm the belief that M.S.' positive UA result was produced by unauthorized drug consumption, Lt. Swain obtained a memorandum from

---

[2]The inmate is identified in the materials, but for purposes of this Report and Recommendation, only his initials are used.

FTC's Chief Pharmacist which indicated that M.S. had no prescriptions for drugs that would have produced a morphine positive UA test. Id. at 8, 17-18.

After concluding his investigation, Lt. Swain drafted an Incident Report on June 7, 2006, charging Petitioner with Possession of Any Drug Not Prescribed by Medical (Aiding) that described the evidence supporting the charge including the UA test results, the Chief Pharmacist's memorandum, and M.S. and Petitioner's statements. Id. at Attach. A, pp. 1-2. Petitioner received a copy of the Incident Report on that same day. Id. at 1. After holding a hearing, the Unit Disciplinary Committee ("UDC") recommended that the charge be referred to a Disciplinary Hearing Officer ("DHO") for further proceedings. Id. at 1-2. Petitioner requested and received the assistance of a Staff Representative, Vicki Abner. Id. at Attach. B, pp. 1, 3.

The DHO held a hearing on July 14, 2006. At the hearing, Petitioner was represented by Ms. Abner, denied the charges against him, and, according to the DHO's report, said only "no comment" when given the opportunity to make a statement. The DHO's report also indicated that Petitioner presented one live witness, a staff pharmacist, who stated that Petitioner's prescribed medication would produce a positive UA test for codeine and morphine. Id. at Attach. C, p. 1.

The DHO found Petitioner guilty. According to the DHO's report, his conclusion was based upon the Incident Report and investigation, M.S.' positive UA test, the Chief Pharmacist's memorandum, Petitioner's medical records which showed that he had a prescription for the drug detected in M.S.' urine, M.S. and Petitioner's statements, and

3

an adverse inference drawn from Petitioner's refusal to make a statement at his hearing. Id. at 2.

As punishment for the disciplinary conviction, Petitioner lost 40 days of good conduct time, forfeited 40 days of non-vested good conduct time, and was placed in disciplinary segregation for 60 days. Petitioner appealed the DHO's decision to the Bureau of Prisons' ("BOP") South Central Regional Office and to the BOP Administrative Remedy Section, but his disciplinary conviction was affirmed. Petition, pp. 3-3A.

## II. DISCUSSION

Petitioner contends that he was denied due process in conjunction with his disciplinary hearing. Specifically, he claims: (1) the DHO did not permit his witnesses to testify; (2) the DHO refused to accept documents presented in his defense; (3) the DHO did not permit information to be released to his Staff Representative in accordance with BOP policy; and (4) the DHO's hearing report contains false and inaccurate information.[3] Petition, p. 4. In his reply, Petitioner also contends the DHO relied on hearsay evidence in finding him guilty. Reply, p. 2b.

"It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." Howard v. United States Bureau of Prisons, 487 F.3d 808, 811 (10th Cir. 2007) (quoting Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir. 1996)). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and

---

[3] Although Petitioner alleges this claim as a separate ground for relief, the implications of the alleged inaccuracies contained in the DHO's report are considered in the discussion of Petitioner's other grounds for relief instead of as an independent violation of the right to due process.

the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). An inmate receives due process in conjunction with an institutional disciplinary proceeding if he is given: (1) advance written notice of the disciplinary charge, (2) an opportunity, consistent with the institutional safety and correctional goals, to present witnesses and documentary evidence, and (3) a written statement of the evidence relied on and the reasons for any disciplinary action. Superintendent v. Hill, 472 U.S. 445, 454 (1985). If these protections are provided and there is "some evidence" to support the resolution of the disciplinary charge, then the Due Process Clause's procedural requirements have been satisfied. Id.; Mitchell, 80 F.3d at 1445 (noting that the scope of a court's due process review of a prison disciplinary proceeding is limited to determining whether Wolff's requirements are met and there is some evidence to support the decision). Petitioner does not argue that he received insufficient notice of the charge against him or that he did not receive a statement of the reasons and evidence supporting his conviction. Therefore, the scope of review in this action is limited to determining whether Petitioner received a sufficient opportunity to present witnesses and documentary evidence and whether there is "some evidence" to support the disciplinary conviction.

**1. Opportunity to Present Witnesses and Documentary Evidence**

To provide due process, prison officials must give an inmate facing disciplinary proceedings the opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566. The scope of a prisoner's right to

call and confront witnesses and present documentary evidence is committed to the sound discretion of prison officials who must exercise their discretion on an individualized basis. Ramer v. Kerby, 936 F.2d 1102, 1104 (10th Cir. 1991). Reviewing courts should pay deference to a prison official's decision "to limit access to other inmates to collect statements or to compile other documentary evidence." See Wolff, 418 U.S. at 566. Errors made by prison officials in denying witness testimony at hearings are subject to harmless error review. Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006). Furthermore, a prisoner cannot maintain a due process claim for failure to permit witness testimony unless he shows that the testimony "'would have affected the outcome of his case.'" Id. (quoting Chesson v. Jaquez, 986 F.2d 363, 366 (10th Cir. 1993)).

### A. Witnesses

Petitioner alleges that at his UDC hearing, the Committee "denied the Petitioner his right to call witnesses (from outside the institution) and Correctional Officers who were present during initial questioning of the Petitioner" to support his claim that the UDC did not allow him to present the testimony of his listed witnesses. Reply, p. 3. The Response does not address Petitioner's claim concerning his ability to present witnesses at the UDC hearing.

Petitioner has not identified the witnesses that he was not permitted to call or described what their testimony would have been and how it would have helped his defense. Petitioner's failure to show that the testimony he requested and was denied would have aided his defense is dispositive of this claim. See Grossman, 447 F.3d at 805.

Turning to the claim that the DHO refused to allow Petitioner to present his listed witnesses, Petitioner alleges that he requested a staff pharmacist, Ms. Hearing, to provide testimony but that the DHO did not allow it. Reply, p. 2, Ex. 9. Contrary to Petitioner's allegations, and as Respondent notes, the DHO's report indicates that Petitioner's only listed witness was Ms. Hearing, that she was permitted to testify and that she testified that Petitioner had a prescription that would result in a positive UA test for morphine and codeine. Id. at Ex. 3, p. 1; Response, p 5. However, Petitioner has submitted several Requests to Staff from various officials present during the hearing which cast doubt upon the DHO's assertion that Ms. Hearing provided live testimony. Reply, Exs. 5-8.

Assuming for argument's sake that Petitioner's allegations are true and that the DHO did not permit Ms. Hearing to testify and failed to individually consider the request for her testimony, the error is inconsequential because Petitioner has not shown that it was harmful. According to the DHO's report, Ms. Hearing would simply testify that Petitioner had a prescription that would cause him to test positive for the presence of morphine and codeine. Petitioner has not taken issue with her purported testimony. This testimony was already before the DHO in the form of the Chief Pharmacist's statement and it was not Petitioner's positive urine test that was at issue but rather the positive urine test of M.S. Petitioner has failed to show how her testimony would have been helpful. See Grossman, 447 F.3d at 805.

**B.    Documents**

Petitioner contends that he tendered documentary evidence in support of his defense, but the DHO would not accept it. He does not describe the documents that he

alleges were rejected.  See Reply, pp. 2-2a.  Relying on the DHO's report, which indicates that Petitioner did not proffer any documents, Respondent has not addressed Petitioner's claim.  See Response, p. 5.

Petitioner's claim that he was denied the opportunity to present documents at his disciplinary hearing does not warrant relief because he has not alleged details sufficient to permit review of the claim.  Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991) (noting that a pro se litigant has the "burden of alleging sufficient facts on which a recognized legal claim could be based.").  He does not describe the documents that he wished to introduce or what the DHO's justification, if any, was for refusing to consider them.  Without such information it is impossible to evaluate whether the DHO made an individualized determination to forbid introduction of the documents based upon legitimate penological concerns.

Petitioner also contends that the DHO did not release "exculpatory" information, namely a copy of Lt. Swain's investigative report to the Staff Representative, Ms. Abner.  See Reply, pp. 2b-3.  As the claim was raised in the Reply, the Response does not address it.

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that in a criminal trial, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).  To date, the Tenth Circuit Court of Appeals has not extended Brady to prison disciplinary proceedings.  See Godlock v. Fatkin, No. 03-6003, 84 Fed. Appx. 24, 28-29

(10th Cir. Dec. 16, 2003).[4]  But assuming for the moment that <u>Brady</u> protections do apply to prison disciplinary proceedings, Petitioner is not entitled to habeas relief based upon the DHO's refusal to provide Ms. Abner a copy of the investigative report.

To establish a <u>Brady</u> violation, a criminal defendant bears the burden to prove that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material.  <u>Brady</u>, 373 U.S. at 87.

Although Petitioner initially claims to have been denied access to "exculpatory" evidence, he later hedges his characterization of the investigative report by calling it "relevant if not exculpatory."  Reply, pp. 2b-3.  Respondent has filed a copy of the report which indisputably inculpates Petitioner by cataloguing Lt. Swain's investigation.  However, the report does not contain exculpatory information.  <u>See</u> Response, Ex. 2, Attach. C, pp. 15-19.  Accordingly, the failure to provide the report to Petitioner did not violate <u>Brady</u> and provides no basis for habeas relief.

Petitioner also contends that the failure to provide Ms. Abner with a copy of the investigative report violated BOP regulations and, accordingly, his right to due process.  <u>See</u> Petition, p. 4; Reply, p. 3.  Petitioner has not identified any specific BOP policy that he contends was violated, but assuming for argument's sake that the failure to release this information to Ms. Abner did violate a BOP policy, that violation cannot be the basis of a due process claim.

"[A] failure to adhere to administrative regulations does not equate to a constitutional violation," and thus the relevant inquiry here is not whether the

---

[4] This and any other unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

9

proceeding complied with prison regulations.  See Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993).  Rather, as set forth earlier, review of Petitioner's disciplinary proceeding is "limited to whether the three steps mandated by Wolff were followed and whether there was some evidence to support the [DHO's] findings."  Mitchell, 80 F. 3d at 1445; e.g., Diaz v. McGuire, No. 05-3149, 154 Fed. Appx. 81, 84-85 (10th Cir. Nov. 14, 2005) cert. denied, 546 U.S. 1221 (2006) (stating that prison regulations are not designed to confer rights on inmates, and the process which is due is measured by the due process clause).  Thus, even if the DHO failed to follow BOP regulations here, that failure in and of itself did not deprive Petitioner of due process.

**2.     "Some Evidence"**

In reviewing the sufficiency of the evidence supporting a prison disciplinary conviction, the sole question is whether there was "some evidence" supporting the decision.

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-56 (quoting United States ex rel. Vajtauer v. Comm'r, 273 U.S. 103, 106 (1927)).  The decision may be upheld even if there is only "meager" evidence to support it.  Id. at 457; Mitchell, 80 F.3d at 1445.

Petitioner challenges the sufficiency of the evidence supporting his disciplinary hearing with an argument that the DHO inappropriately relied on M.S.' "hearsay"

statement contained in the Incident Report.  See Reply, p. 2a.  Respondent acknowledges that the DHO relied on M.S.' statement as evidence supporting his findings, but does not address the propriety of relying on it.  Response, p. 7.

Contrary to Petitioner's claims, it is permissible to rely upon hearsay evidence, such as a written incident report, in a prison disciplinary proceeding.  See Hill, 472 U.S. at 456; Smith v. Samu, No. 94-1570, 1995 WL 275720, at *2 (10th Cir. May 10, 1995) (rejecting claim that it was improper to rely on prison guard's report because it was hearsay).  That a report is hearsay bears on its weight as evidence, and due process review of prison disciplinary proceedings does not involve making credibility determinations or reweighing the evidence.  Hill, 472 U.S. at 455; Smith, id.  Accordingly, the DHO's reliance in part upon M.S.'s statement did not deprive Petitioner of due process.

Lastly, the DHO noted in his report that Petitioner refused to make a comment at the hearing and then drew an adverse inference from Petitioner's failure to speak.  Response, Ex. 2, Attach. C, pp. 1-2.  Petitioner contends, and has provided some materials supporting his contention, that he in fact did make a statement at the disciplinary hearing.  Reply, pp. 2a-2b, Exs. 5-8.  Assuming that Petitioner's allegations are true and that the DHO erroneously noted that Petitioner did not speak at his hearing and drew an adverse inference from that mistaken notation, the error did not deprive Petitioner of the due process right to be convicted upon "some evidence."  If the adverse inference is excluded from the evidence supporting the DHO's finding, there is still more

than ample evidence supporting Petitioner's conviction, including the Incident Report, the UA tests, and both Petitioner's and M.S.' admissions.

None of the grounds for relief raised in the petition amount to a violation of Petitioner's right to due process. Therefore, habeas relief should be denied.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for a writ of habeas corpus [Doc. No. 1] be **DENIED**. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by December 25, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Petitioner is advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 5th day of December, 2007.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE